IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:05-CR-00155-F-1
No. 5:11-CV-00221-F

CARLOS JAVIER MEDINA-CASTELLANOS,      )
                              Petitioner,      )
                                               )
                  v.                           )            O R D E R
                                               )
UNITED STATES OF AMERICA,                      )
                              Respondent.       )

    This matter is before the court on Carlos Javier Medina-Castellanos' Motion to Vacate,

Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 [DE-261]. Also before the court are

the Government's Motion to Dismiss [DE-274] and Motion for Summary Judgment [DE-292].

The issues have been fully briefed, and the matter is now ripe for ruling. For the reasons more

fully stated below, Medina-Castellanos is not entitled to relief on his section 2255 motion. The

Government's Motion for Summary Judgment is ALLOWED in part and DENIED in part, and

the Government's Motion to Dismiss is DISMISSED as moot.

## I. Factual and Procedural Background

    On June 8, 2005, Medina-Castellanos and two co-defendants were charged in a four-

count indictment. *See* Indictment [DE-10]. A four-count superseding indictment was filed on

October 13, 2005. *See* Superseding Indictment [DE-53]. In Count One of the Superseding

Indictment, Medina-Castellanos was charged with conspiracy to commit interstate transportation

of stolen property in excess of $5,000, in violation of 18 U.S.C. § 371. Counts Three and Four

charged Medina-Castellanos with interstate transportation of stolen property and violent crimes

in aid of a racketeering enterprise and aiding and abetting, in violation of 18 U.S.C. §§ 1959(a)(3) and 2.[1]

Medina-Castellanos' first arraignment was held on January 17, 2006. At this arraignment, Medina-Castellanos entered a plea of not guilty as to Counts One, Three, and Four of the Superseding Indictment and exercised his right to a jury trial. Following a ten-day trial, the jury returned a guilty verdict on Counts One and Four. The jury was unable to reach a verdict as to Count Three.

On April 19, 2006, a three-count second superseding indictment was filed. *See* Second Superseding Indictment [DE-121]. Count Two of the Second Superseding Indictment charged Medina-Castellanos with interstate transportation of stolen property and violent crimes in aid of a racketeering enterprise and aiding and abetting, in violation of 18 U.S.C. §§ 1959(a)(3) and 2.[2]

The court held Medina-Castellanos' second arraignment on July 3, 2006. At that time, the court was presented with a cooperation agreement between Medina-Castellanos and the Government. *See* July 3, 2006 Transcript [DE-303] at 20-22. In the cooperation agreement, Medina-Castellanos was required to admit guilt as to Counts One and Four of the Superseding Indictment, the counts on which he was convicted. *Id.* at 21-22. Upon questioning in open court, Medina-Castellanos refused to admit his guilt as set forth in the agreement. *Id.* at 35-37. Because Medina-Castellanos refused to acknowledge culpability, the cooperation agreement was not entered.

---

[1]Medina-Castellanos was not charged in Count Two of the Superseding Indictment.

[2]Medina-Castellanos was only charged in Count Two of the Second Superseding Indictment.

2

On November 13, 2006, Medina-Castellanos' third arraignment was held. At this arraignment, Medina-Castellanos entered a plea of not guilty and proceeded to trial for a second time. After an eleven-day trial, the jury returned a verdict of guilty as to Count Two of the Second Superseding Indictment.

Medina-Castellanos' sentencing hearing was held on March 27, 2007. At that time, Medina-Castellanos was sentenced to 60 months' imprisonment on Count One of the Superseding Indictment. *See* Judgment [DE-204]; Amended Judgment [DE-257]. Medina-Castellanos was sentenced to 240 months' imprisonment on Count Four of the Superseding Indictment, and the sentence was ordered to be served consecutive to the sentence imposed in Count One of the Superseding Indictment. Medina-Castellanos was sentenced to 240 months' imprisonment on Count Two of the Second Superseding Indictment, and the sentence was ordered to be served consecutive to the sentence imposed in Count Four of the Superseding Indictment. Consequently, Medina-Castellanos' aggregate sentence was 540 months' imprisonment.

Medina-Castellanos filed a Notice of Appeal [DE-200] on March 29, 2007.[3] In an unpublished opinion [DE-254], the Fourth Circuit Court of Appeals affirmed Medina-

_____

[3]Medina-Castellanos raised the following issues on direct appeal: (1) the trial court erred in admitting, during his first trial, a letter that he wrote to his uncle; (2) the trial court erred in admitting testimony of his former wife; (3) the trial court erred in the calculation of his advisory guidelines range as to Counts Four and Two by applying U.S.S.G. § 2A3.1; (4) the trial court erred in applying the two-level enhancement pursuant to U.S.S.G. § 3B1.1(c) for Counts Four and Two based on his leadership or management role; (5) the trial court erred in applying the two-level enhancement pursuant to U.S.S.G. 2B1.1(b)(12)(B) for possession of a dangerous weapon for Count One; (6) the trial court erred in applying the two-level enhancement for obstructing justice pursuant to U.S.S.G. § 3C1.1 for Counts One and Four; and (7) the trial court erred in applying U.S.S.G. § 3D1.4 because there were multiple counts that could not be grouped.

Castellanos' convictions and sentence.[4]  Medina-Castellanos filed a petition for certiorari to the United States Supreme Court, and it was denied.

On May 2, 2011, Medina-Castellanos filed the instant Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 [DE-261].  In his section 2255 motion, Medina-Castellanos argues that he received ineffective assistance of counsel in the following respects: (1) his trial attorney failed to challenge the violation of the Speedy Trial Act; (2) his trial attorney failed to ensure his decision to proceed to trial was both knowing and voluntary; (3) his trial attorney failed to utilize the assistance of the attorney who represented him in his State court proceedings; (4) his trial attorney failed to make a *Batson* challenge; (5) his trial attorney failed to subpoena witnesses who testified during his State court proceedings; (6) his trial attorney failed to call the witnesses who provided him with a defense during his State proceedings and failed to call the attorney who represented him during his State court proceedings; (7) his attorney failed to present an accurate translation when she moved for dismissal based on the translator's misinterpretation of trial testimony; (8) his trial attorney refused to allow him to testify and failed to inform him that it was his decision whether or not to testify; (9) his trial attorney failed to present evidence of his State proceedings; (10) his trial attorney failed to present evidence from witness Silvia Fajardo; (11) his trial attorney failed to properly argue for acquittal during closing argument and during argument on the Rule 29 motion; (12) his trial attorney failed to properly challenge the testimony of his former wife; (13) his trial attorney failed to properly argue against the use of U.S.S.G. § 2A3.1; (14) his trial attorney failed to argue that a 540-month sentence was unreasonable; (15) his trial attorney failed to argue that the

---

[4]The Fourth Circuit remanded the case for the correction of a clerical error in this court's Judgment.  [DE-254] at 8.  Specifically, the Fourth Circuit noted that the Judgment erroneously indicated that Medina-Castellanos pled guilty to the offenses of conviction.  *Id.*

4

imposition of consecutive sentences was erroneous; (16) his appellate attorney failed to challenge the speedy trial violation; (17) his appellate attorney failed to challenge the *Batson* violation which occurred; (18) his appellate attorney failed to challenge the erroneous denial of his motion for a mistrial; (19) his appellate attorney failed to challenge the sufficiency of the evidence; (20) his appellate attorney failed to challenge the imposition of his sentences to run consecutively; (21) his appellate attorney failed to challenge the reasonableness of his sentence; and (22) his appellate attorney failed to challenge the court's refusal to accept his guilty plea.

The Government has filed a Motion to Dismiss [DE-274], seeking dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Government has also filed a Motion for Summary Judgment [DE-292].

## II. Legal Standard

Summary judgment is appropriate where there is no genuine issue of material fact and it appears that the moving party is entitled to judgment as a matter of law. *United States v. Lee*, 943 F.2d 366, 368 (4th Cir. 1991) (applying the summary judgment standard to a motion to vacate). Any permissible inferences which are drawn from the underlying facts must be viewed in a light most favorable to the nonmoving party. *Matsushita Elec. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). Summary judgment is appropriate when the record taken as a whole could not lead a trier of fact to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III. Discussion

Medina-Castellanos has raised twenty-two ineffective assistance of counsel claims before this court. In order to prevail on a claim of ineffective assistance of counsel, a petitioner must show that (1) his counsel's performance was deficient, and (2) the deficient performance

prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 687-88 (1984). The petitioner

bears the burden of proof as to both prongs of the *Strickland* standard. *United States v. Luck*, 611

F.3d 183, 186 (4th Cir. 2010). Under the first prong, the petitioner must show that his counsel's

representation "fell below an objective standard of reasonableness" as measured by "prevailing

professional norms." *Strickland*, 466 U.S. at 688. There is "a strong presumption that counsel's

conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. As for the

second prong, the petitioner must demonstrate that his counsel's inadequate performance was

prejudicial to him. *Id.* at 687. Specifically, the petitioner must show "a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have been

different." *Id.* at 694. A "reasonable probability" is defined as "a probability sufficient to

undermine confidence in the outcome." *Id.* With the *Strickland* standard in mind, the court will

address each of Medina-Castellanos' ineffective assistance of counsel claims in turn.

A.    **Medina-Castellanos Has Failed to Raise a Genuine Issue of Material Fact in His First, Third through Seventh, and Ninth through Twenty-Second Claims.**

    **1. Failed to challenge the violation of the Speedy Trial Act**

In his first claim, Medina-Castellanos alleges that his trial attorney provided ineffective

assistance of counsel by failing to move for dismissal based on the violation of his rights under

the Speedy Trial Act. [DE-261]at 4; [DE-273] at 5-9. Medina-Castellanos argues that two

hundred and nine (209) non-excludable days had expired when his first trial finally commenced

on January 17, 2006. [DE-273] at 9. Medina-Castellanos contends that his attorney's failure to

move for a dismissal was deficient performance because there can be no strategic or tactical basis

6

to excuse his attorney's failure. *Id.* Medina-Castellanos concludes that if his attorney had moved to dismiss, there is a reasonable probability that the court would have allowed the motion. *Id.*

Under the provisions of the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, a defendant must be brought to trial within seventy (70) days from the filing of the indictment or from the date of his initial appearance, whichever is later. 18 U.S.C. § 3161(c)(1). Section 3161(h) sets forth periods of time that should be excluded "in computing the time within which the trial of any such offense must commence." Of particular relevance in this case are 18 U.S.C. § 3161(h)(1)(D), (h)(6), and (h)(7)(A). Section 3161(h)(1)(D) excludes "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." Section 3161(h)(6) excludes "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." Finally, section 3161(h)(7)(A) excludes "[a]ny period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government."

If a defendant is not brought to trial as required by section 3161(c), as extended by section 3161(h), the information or indictment shall be dismissed on motion of the defendant. 18 U.S.C. § 3162(a)(2). In determining whether dismissal of the case should be with or without prejudice, "the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." *Id.*

The Indictment [DE-10] in this case was filed on June 8, 2005, and Medina-Castellanos' initial appearance was held on June 14, 2005. Because the initial appearance occurred later, the

June 14, 2005 initial appearance date triggers the start of the 70-day clock under the Speedy Trial

Act. At this point in time, a trial date on or before August 23, 2005 would have satisfied the

Speedy Trial Act.

Then, on July 12, 2005, Mahmoud Bassar, Medina-Castellanos' codefendant, had his

initial appearance, which triggered Bassar's 70-day clock. Because only 28 days passed between

Medina-Castellanos' initial appearance and Bassar's initial appearance, this time was properly

excluded pursuant to 18 U.S.C. § 3161(h)(6). The court then properly scheduled the trial for

September 19, 2005.

On August 11, 2005, Bassar filed several motions, including a motion to dismiss Counts

Three and Four of the Indictment [DE-29] and a motion in limine [DE-30] seeking to exclude a

letter written by Medina-Castellanos. The court held a hearing on the motion in limine on

January 4, 2006, and the motion was allowed on January 20, 2006. Pursuant to 18 U.S.C. §

3161(h)(1)(D), the period of time from when Bassar filed these motions until their disposition

was properly excluded.

On October 26, 2005, the Government filed a motion to continue [DE-58] the trial date,

pursuant to 18 U.S.C. § 3161(3)(A), 3161(3)(B)(7), and 3161(3)(B)(8)(A). In its motion, the

Government noted that a Superseding Indictment was issued on October 13, 2005, which added

two additional defendants. The Government further noted that it was in the process of securing

these two defendants, but that this would not be accomplished by the scheduled trial date of

November 14, 2005. The Government argued that if the court proceeded without the presence of

these two additional defendants, there would be a complete duplication of the trial that would

result in a needless waste of judicial and governmental resources. On October 27, 2005, the

8

court entered an order [DE-60] allowing the motion to continue the trial to January 17, 2006. The court concluded that any period of delay occasioned by the continuance was properly excluded pursuant to 18 U.S.C. § 3161(h)(7)(A), on the basis that the ends of justice served by the continuance outweighed the interests of the defendants and the public in a speedy trial.

Based on the foregoing, the court finds that each of the above-stated continuances resulted in a proper exclusion of time from the 70-day period. Accordingly, the court concludes that there was no violation of the Speedy Trial Act. Because no violation of the Speedy Trial Act occurred, Medina-Castellanos has not presented a genuine issue of material fact regarding whether his attorney's failure to file a motion to dismiss on this basis was deficient performance that prejudiced him. *See Moore v. United States*, 934 F. Supp 724, 731 (E.D.Va. 1996) (holding that failure to raise a meritless argument can never amount to ineffective assistance). Consequently, the Government is entitled to summary judgment on Medina-Castellanos' first claim.

### 2. Failed to utilize the assistance of prior attorney

In his third claim, Medina-Castellanos alleges that his trial attorney provided ineffective assistance of counsel by refusing to accept the assistance of Robert Nunley, the attorney who represented him in the State proceedings that were based on the same offenses. [DE-261] at 4; [DE-273] at 11-12. Medina-Castellanos contends that it was objectively unreasonable for his attorney to refuse the assistance of Nunley for the following reasons: Nunley was extremely familiar with the case; Nunley was successful in defending him against the same charges in State court; and Nunley offered to provide his assistance free of charge. [DE-273] at 12. Medina-Castellanos maintains this was a "close case " and argues that if his attorney had accepted

9

Nunley's assistance, there is a reasonable probability that the result of his trial would have been different. *Id.*

At the outset, the court notes that Medina-Castellanos has cited to no legal authority to support his position that his attorney's failure to accept assistance from attorney Nunley constituted deficient performance. Moreover, even if Medina-Castellanos could somehow raise a genuine issue of material fact regarding whether this was deficient performance, Medina-Castellanos has failed to show a genuine issue of material fact exists regarding whether there was prejudice arising from his attorney's failure to accept Nunley's assistance. Accordingly, the Government is entitled to summary judgment on Medina-Castellanos' third claim.

### 3. Failed to raise a *Batson* challenge

Medina-Castellanos alleges in his fourth claim that his trial attorney provided ineffective assistance of counsel by failing to make a challenge pursuant to *Batson v. Kentucky*, 476 U.S. 79 (1986). [DE-261] at 4; [DE-273] at 13-14. Specifically, Medina-Castellanos contends that the jury pool improperly excluded all Spanish Americans, his race, and the only African American in the pool was excluded by the Government without his knowledge or consent. [DE-261] at 4; [DE-273] at 13. Medina-Castellanos concludes that any reasonably competent criminal defense attorney faced with the same circumstances would have made a *Batson* challenge. [DE-273] at 14. Medina-Castellanos maintains that if his attorney had made a *Batson* challenge, there is a reasonable probability that "the result" would have been different. *Id.*

In *Batson*, the Supreme Court held that the Equal Protection Clause forbids the Government from challenging potential jurors based solely on account of their race. 476 U.S. 79, 89 (1986). In order to successfully raise a *Batson* challenge, a defendant must demonstrate the

10

following: (1) the defendant is a member of a distinct racial group; (2) the prosecutor used the challenges to remove from the venire members of the defendant's race; and (3) other facts and circumstances surrounding the proceeding raise an inference that the prosecutor discriminated in his selection of the jury pool. *Id.* at 96-97.

Medina-Castellanos' allegation that there were no Hispanic Americans in his venire is not sufficient to state a claim for purposeful discrimination under *Batson*. Likewise, Medina-Castellanos' observation that the sole African American in the venire was excluded by the Government without his knowledge or consent is also insufficient to state a claim under *Batson*. Because Medina-Castellanos has failed to show that the facts presented in his case warranted a *Batson* challenge, he has not raised a genuine issue of material fact regarding whether his attorney's failure to make a *Batson* challenge was deficient performance. *See Moore*, 934 F. Supp at 731 (holding that failure to raise a meritless argument can never amount to ineffective assistance). Additionally, Medina-Castellanos' bare conclusion that if his attorney had made a *Batson* challenge, "the result would have been different" is insufficient to raise a genuine issue of material fact on the issue of prejudice. *See United States v. Terry*, 366 F.3d 312, 316 (4th Cir. 2004) ("[C]onclusory allegations are insufficient to establish the requisite prejudice under *Strickland*."). Consequently, the Government is entitled to summary judgment on Medina-Castellanos' fourth claim.

### 4. Failed to subpoena witnesses from the State proceedings

In his fifth claim, Medina-Castellanos alleges that his trial attorney provided ineffective assistance of counsel by failing to subpoena witnesses who testified as to his innocence during the State proceedings. [DE-261] at 4; [DE-273] at 14-15. Medina-Castellanos contends that he

11

repeatedly told his attorney about these witnesses and their willingness to testify, but his attorney refused to call or even interview these witnesses. [DE-273] at 15. Also, Medina-Castellanos contends that he informed his attorney of a letter written by alleged victim Silvia Fajardo, in which she made known that Medina-Castellanos was innocent of Counts Two and Count Four, but his attorney failed to admit the letter during his case or even question Fajardo about its contents. *Id.* Medina-Castellanos asserts that his attorney's performance was deficient because there simply can be no strategic or tactical reason to excuse his attorney's failure to present this evidence. *Id.* Medina-Castellanos concludes that if his attorney had presented this evidence, there is a reasonable probability that the jury would have acquitted him on Counts Two and Four. *Id.*

At the outset, the court notes that Medina-Castellanos has failed to state specifically *which* witnesses, other than Fajardo, should have been subpoenaed by his attorney. Moreover, Medina-Castellanos has failed to state specifically *what* favorable evidence these witnesses would have provided that would have resulted in him being acquitted on Counts Two and Four. Consequently, the court concludes that Medina-Castellanos has not raised a genuine issue of material fact regarding deficient performance by his attorney and prejudice arising therefrom.

With respect to Medina-Castellanos' attorney's failure to subpoena Fajardo, it appears she was not subject to subpoena. According to the Government, Fajardo was deported shortly after the State court proceedings. [DE-293] at 25. Medina-Castellanos does not dispute this assertion. [DE-295] at 5. Accordingly, Medina-Castellanos has failed to raise a genuine issue of material fact on the issue of deficient performance by his trial attorney for failing to subpoena

Fajardo.  Consequently, the Government is entitled to summary judgment on Medina-Castellanos' fifth claim.

### 5.  Failed to call his prior attorney and witnesses

Medina-Castellanos alleges in his sixth claim that his trial attorney provided ineffective assistance of counsel when she failed to call attorney Nunley and the witnesses who exonerated him on the State charges.  [DE-261] at 5; [DE-273] at 15-17.  Medina-Castellanos concludes that if his attorney had called these witnesses, there is a reasonable probability that, at a minimum, he would have been acquitted on Counts Two and Four.  [DE-273] at 16-17.

This claim overlaps with Medina-Castellanos' fifth claim.  In this claim, as in his fifth claim, Medina-Castellanos has failed to state *which* witnesses provided evidence in the State proceedings that were not called during his two trials before this court.  Additionally, Medina-Castellanos has failed to state specifically *what* favorable evidence these witnesses would have provided that would have resulted in him being acquitted.

Although Medina-Castellanos alleges error by his attorney for failing to call attorney Nunley, the court notes that Nunley *was* called to testify during Medina-Castellanos' second trial.  *See* December 1, 2006 Transcript [DE-233] at 1151-64.  Through Nunley's testimony, Medina-Castellanos' attorney was successful in bringing out favorable evidence from witnesses Rigoberto Castellanos, Jose Luis Castellanos, and Luis Alberto Castellanos.  *Id.* at 1157-58.

In sum, the court finds that Medina-Castellanos has failed to raise a genuine issue of material fact regarding either deficient performance by his attorney or any prejudice arising

13

therefrom.  Therefore, the Government is entitled to summary judgment on Medina-Castellanos' sixth claim.

### 6.  Failed to present an accurate translation

In his seventh claim, Medina-Castellanos alleges that his trial attorney provided ineffective assistance of counsel when she failed to present an accurate translation to support her motion for a mistrial based on erroneous translation of testimony by Translator Perez.[5]  [DE-261]

---

[5]In an Order [DE-308] entered on December 23, 2014, the court directed Medina-Castellanos to file references to the trial transcript to support his seventh claim.  In response, Medina-Castellanos presented an entirely new argument.  Specifically, Medina-Castellanos argued that "Interpreter Perez misinterpreted the testimony of Hispanic speaking witnesses by choosing interpretations that were more favorable to the government and by making it difficult for Petitioner to listen to the testimony of the witnesses, by clearing his throat or coughing into the microphone being used to assist in the translations."  [DE-312] at 1.
   A person convicted of a federal offense has one year to file a section 2255 motion, starting from the latest of the following dates:

>   (1) the date on which the judgment of conviction becomes final;
>
>   (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
>   (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>   (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f)(1)-(4).  A section 2255 claim presented in a motion to amend that is filed more than one year after the conviction becomes final is untimely under 28 U.S.C. § 2255(f)(1), unless the claim relates back to a timely-filed claim, pursuant to Rule 15(c) of the Federal Rules of Civil Procedure.  *See Mayle v. Felix*, 545 U.S. 644, 662-64 (2005).

at 5; [DE-273] at 17-18. Citing *United States v. Armendariz-Mata*, 949 F.2d 151, 156 (5th Cir. 1991), Medina-Castellanos contends that when a defendant believes a translation is inaccurate, the defendant has the burden of challenging the accuracy of the translation by presenting another translation. [DE-273] at 17. Medina-Castellanos concludes that he was prejudiced because the erroneous translations in this case went straight to the heart of the evidence against him, such that there is a reasonable probability that the jury's verdict was affected. *Id.* at 18.

Medina-Castellanos has argued that his attorney moved for a mistrial based on Translator Perez's misinterpretation of trial testimony. [DE-273] at 17. The court entered two orders [DE-296, DE-308] seeking citation to the record to support this claim, and Medina-Castellanos never provided the record cites showing that this actually occurred during one of his trials. This court's independent review of the transcripts from both trials failed to reveal that Medina-Castellanos' attorney actually moved for mistrial based on inaccurate interpretation by Perez. For these reasons, the court finds that Medina-Castellanos has failed to raise a genuine issue of material fact regarding deficient performance by his attorney.

The court also concludes that Medina-Castellanos has failed to raise a genuine issue of material fact as to prejudice. Specifically, Medina-Castellanos summarily argues that there is a reasonable possibility that the erroneous translation affected the jury's verdict. This bare argument fails to raise a genuine issue of material fact as to prejudice. *See Terry*, 366 F.3d at

---

This court entered judgment in this case on March 27, 2007. As noted, Medina-Castellanos appealed his case to the Fourth Circuit. Medina-Castellanos also filed a petition for certiorari to the United States Supreme Court that was denied on May 3, 2010. Medina-Castellanos' Response [DE-312], which contains the new claim, was filed on January 5, 2015. The court concludes that Medina-Castellanos' new claim is time-barred.

316 ("[C]onclusory allegations are insufficient to establish the requisite prejudice under *Strickland*."). Consequently, the Government is entitled to summary judgment on Medina-Castellanos' seventh claim.

### 7. Failed to present evidence of State proceedings

In his ninth claim, Medina-Castellanos alleges that his trial attorney provided ineffective assistance of counsel by failing to present evidence of his State proceedings. [DE-261] at 5; [DE-273] at 20. Medina-Castellanos reasons that the evidence of the State proceedings was material to his defense before this court, and he concludes that no strategic or tactical reason existed that could excuse his attorney's failure to present this evidence. [DE-273] at 20.

Medina-Castellanos has not stated specifically *what* exculpatory evidence from his State proceedings his attorney erred by failing to present. Moreover, Medina-Castellanos has failed to suggest *how* the failure to present this evidence prejudiced him. In short, the court concludes that Medina-Castellanos has not raised a genuine issue of material fact regarding either deficient performance by his attorney or any prejudice arising therefrom. Accordingly, the Government is entitled to summary judgment on Medina-Castellanos' ninth claim.

### 8. Failed to admit letter from Silvia Fajardo

Medina-Castellanos alleges in his tenth claim that his trial attorney provided ineffective assistance of counsel by failing to admit into evidence a letter written by alleged victim Silvia Fajardo. [DE-261] at 5; [DE-273] at 21. Medina-Castellanos argues that there is no justifiable excuse for his attorney's failure to present this evidence because the letter went to the very heart of his defense. [DE-273] at 21. Medina-Castellanos concludes that if the jury had heard

Fajardo's letter, there is a reasonable probability that he would have been acquitted on Counts Two and Four. *Id.*

Attached to the Memorandum in Support of Medina-Castellanos' section 2255 motion is a letter from Fajardo [DE-273-2], which presumably is the letter at issue in this claim. The letter provides as follows:

> The purpose of this letter is to communicate to the Honorable Judge or District Attorney who are reading my letter that the accused, Carlos Javier Medina, is one hundred percent innocent. He has absolutely nothing to do with this case and I withdraw the charges. No one is telling me anything because he is innocent before the eyes of God. I was previously his girlfriend for nine months and I never had any problems with him. He always got along with me and he loved me a lot, and he never had problems with his Uncle Rigoberto Castellano. They got along well. We would often talk to each other in Maryland. And I do not want to appear in any court and I do not want anyone to force me to appear in that court. I want you to leave me in peace; I make this request by God's love. I do not want you to count on my appearance and I withdraw whatever charge against Carlos Javier Medina. And what you have done to me is an injustice having kept me prisoner here for five months without having committed any crime.

[DE-273-2] at 1.

Hearsay is "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). A "statement" can be either oral or written. Fed. R. Evid. 801(a). To determine whether the out of court statement qualifies as inadmissible hearsay, the court must identify the purpose for which the party is introducing the statement. *United States v. Gonzales-Flores*, 701 F.3d 112, 117 (4th Cir. 2012). If the statement is offered for some purpose other than to prove the truth of the matter asserted in the statement, it is not hearsay. *United States v. Pratt*, 239 F.3d 640, 644 (4th Cir. 2001). While hearsay is generally

17

not admissible, Fed. R. Evid. 802, there are exceptions that allow for the admission of certain types of hearsay, *see* Fed. R. Evid. 803-807.

In this case, the Government argues that Fajardo's letter was hearsay that was not admissible under any exception, and as such, it cannot be error that Medina-Castellanos' attorney failed to attempt to admit the letter. [DE-293] at 30. Medina-Castellanos does not dispute this argument. [DE-295] at 6. For this reason, the court concludes that Medina-Castellanos has failed to raise a genuine issue of material fact regarding whether his attorney provided deficient performance by failing to admit Fajardo's letter into evidence. Consequently, the Government is entitled to summary judgment on Medina-Castellanos' tenth claim.

### 9. Failed to properly argue for acquittal

In his eleventh claim, Medina-Castellanos alleges that his trial attorney provided ineffective assistance of counsel by failing to properly argue for acquittal during both closing argument and argument on the Rule 29 motion. [DE-261] at 5. In his Memorandum of Law, Medina-Castellanos concedes that he cannot demonstrate prejudice and withdraws this claim. [DE-273] at 21.

### 10. Failed to properly challenge his former wife's testimony

Medina-Castellanos alleges in his twelfth claim that his trial attorney provided ineffective assistance of counsel by failing to properly challenge the admission of testimony from his former wife, Kimberly Pillsbury. [DE-261] at 5; [DE-273] at 21-22. Specifically, Medina-Castellanos contends that his attorney should have argued that the controlling law of the Fourth Circuit provides that the confidential marital communication privilege applies to information that is

18

privately disclosed between a husband and wife in the confidence of their marital relationship.

[DE-273] at 22. Medina-Castellanos summarily concludes that if Pillsbury's testimony had been

properly challenged, it is a certainty that the result would have been different. *Id.*

> During Pillsbury's testimony, Medina-Castellanos' attorney objected as follows:

> I'm sorry, this is a subject which we've brought up earlier about the exclusion of
> marital communications. We take the position that conduct in the course of the
> marital relationship is protected, as well as speech - -

*See* February 1, 2006 Transcript [DE-250] at 13. This court overruled the objection. *Id.*

On appeal, Medina-Castellanos' attorney argued that this court erred in admitting

Pillsbury's testimony. January 4, 2010 Opinion [DE-254] at 4. In its opinion, the Fourth Circuit

pointed out that Medina-Castellanos' objection before this court was based on a claim that

Pillsbury's testimony violated the confidential marital communications privilege. *Id*. Citing

*United States v. Parker*, 834 F.2d 408, 411 (4th Cir. 1987), the Fourth Circuit noted, "The

confidential marital communication privilege applies to '[i]nformation that is privately disclosed

between husband and wife in the confidence of the marital relationship.'" *Id*. The Fourth Circuit

concluded that Medina-Castellanos' claim failed because he did not point to any act to which

Pillsbury testified about that would fall within the confidential marital communications privilege.

*Id*. The Fourth Circuit also concluded that Medina-Castellanos' adverse spousal testimony claim

lacked merit because Medina-Castellanos and Pillsbury were divorced at the time of Medina-

Castellanos' trials. *Id*. at 5.

As noted, Medina-Castellanos' attorney objected to Pillsbury's testimony on the basis that

it violated the confidential marital communications privilege. *See* February 1, 2006 Transcript

[DE-250] at 13. As also noted, the Fourth Circuit concluded that Medina-Castellanos' argument

that Pillsbury's testimony was erroneously admitted lacked merit. [DE-254] at 4-5. Therefore,

Medina-Castellanos has failed to show that if his attorney had "properly" argued the matter that it

would have been successful. *See Moore*, 934 F. Supp at 731 (holding that failure to raise a

meritless argument can never amount to ineffective assistance). For these reasons, the court

finds that Medina-Castellanos has not presented a genuine issue of material fact regarding

whether his attorney provided deficient performance. Additionally, even if Medina-Castellanos

had raised a genuine issue of material fact as to deficient performance, his bare statement that he

was prejudiced by his attorney's conduct is insufficient to raise a genuine issue of material fact

on the issue of prejudice. *See Terry*, 366 F.3d at 316 ("[C]onclusory allegations are insufficient

to establish the requisite prejudice under *Strickland*."). Consequently, the Government is entitled

to summary judgment on Medina-Castellanos' twelfth claim.

### 11. Failed to properly argue against the use of U.S.S.G. § 2A3.1

Although not crystal clear, Medina-Castellanos appears to allege in his thirteenth claim

that his trial attorney provided ineffective assistance of counsel by failing to properly argue

against the use of U.S.S.G. § 2A3.1 to calculate his advisory guidelines range with respect to

Counts Two and Four.[6] [DE-261] at 7; [DE-273] at 23-24.

In calculating Medina-Castellanos' base offense level for Counts Two and Four, the

Presentence Report notes as follows:

------

[6]To further complicate this court's review of the thirteenth claim, Medina-Castellanos
declined to provide *any* response to the Government's Motion to Dismiss or Motion for
Summary judgment with respect to this claim.

The United States Sentencing Commission Guideline for violation of 18 U.S.C. § 1959(a)(3) is found in Section 2E1.3. Section 2E1.3(a)(2) instructs that the offense level should be the greater of: (1) offense level of 12; or (2) the offense level applicable to the underlying crime or racketeering activity. Application Note 1 of the Commentary to Section 3E1.3 further provides that if the underlying conduct violates state law, the offense level corresponding to the most analogous federal offense is to be used. Therefore, because the offense conduct involved an assault in which the victim was sexually assaulted, the guidelines are calculated under 2A3.1 which calls for a base offense of 30.

PSR ¶¶ 50, 56.

A review of the record reveals that Medina-Castellanos' attorney made the following relevant objection to the Presentence Report:

The defendant objects to the calculations used to determine the adjusted offense levels in both Count 4 (Superseding Indictment) and Count 2 (Second Superseding Indictment) contending that the use of 2A2.2 (Aggravated Assault) and not 2A3.1 (Criminal Sexual Abuse; Attempt to Commit Criminal Sexual Abuse) should be used.

Addendum to PSR at 4. Although ultimately overruled, Medina-Castellanos' attorney pursued this objection at his sentencing hearing held on March 27, 2007. *See* March 27, 2007 Transcript [DE-235] at 4-6.

On appeal, Medina-Castellanos' attorney argued that this court should have calculated his base offense level for Counts Two and Four using U.S.S.G. § 2A2.2 (Aggravated Assault) as opposed to U.S.S.G. § 2A3.1 (Criminal Sexual Abuse). [DE-254] at 5. The Fourth Circuit concluded that this court's application of U.S.S.G. § 2E1.3 was correct. *Id.* The Fourth Circuit noted that in a case such as Medina-Castellanos' where more than one base offense level exists within a particular guideline range, the court is to use the relevant conduct criteria in U.S.S.G. § 1B1.3 to determine the applicable offense level. *Id.* at 6. The Fourth Circuit further noted that

21

Medina-Castellanos' relevant conduct included robberies taking place on February 15, 2004 and May 2, 2004, during which victims were sexually assaulted. *Id.* The Fourth Circuit ultimately held that this court's determination that sexual assault was the underlying crime for purposes of U.S.S.G. § 2E1.3 was "well-supported." *Id.*

The court concludes that Medina-Castellanos' thirteenth claim is belied by the record. Specifically, as outlined above, Medina-Castellanos' attorney *did* object to this court using U.S.S.G. § 2A3.1 to calculate his base offense level for Counts Two and Four. Because Medina-Castellanos has failed to raise a genuine issue of material fact regarding either deficient performance by his attorney or any prejudice arising therefrom, he fails to sustain this claim. Therefore, the Government is entitled to summary judgment on Medina-Castellanos' thirteenth claim.

### 12. Failed to argue that a 540-month sentence was unreasonable

Medina-Castellanos alleges in his fourteenth claim that his attorney provided ineffective assistance of counsel by failing to argue that a sentence of 540 months' imprisonment was unreasonable. [DE-261] at 7; [DE-273] at 24. Medina-Castellanos notes that although the offenses were the result of the same criminal conduct, each of the sentences was ordered to run consecutively. [DE-273] at 24. Medina-Castellanos concludes that if his attorney had made this argument before this court or on appeal, there is a reasonable possibility that the result would have been different. *Id.*

A review of the record reveals that Medina-Castellanos' trial attorney made the following relevant objection to the Presentence Report:

The defendant objects to the initial determination that the convictions in Count 2 of the Second Superseding Indictment and Count 4 of Superseding Indictment represent independent assaults rather than offenses closely interrelated along with the conspiracy count. According to the general theory of the case espoused by the government, Bassar and Medina were trying to maintain or increase their positions in the organization, rather than increase profits, although that would have been a side benefit. When bribery did not work, Linares, Bassar, and Medina resorted to ruff stuff which including attempting to locate contract information at the apartment of Jose Gomez and the apartment of Linares, Rigoberto, and Luis Castellanos. Therefore, the VICAR counts were part and parcel with the conspiracy count as any use of violence was for the purpose of maintaining or increasing positions within the interstate transportation of stolen property operation.

Addendum to PSR at 2-3. At Medina-Castellanos' sentencing hearing, his attorney pursued the

objection by arguing as follows:

And this has to do with our objection and our position, Your Honor, that the two violent crimes in aid of racketeering should be considered as offenses which under the guidelines would be - - run concurrently rather than consecutively.

See March 27, 2007 Transcript [DE-235] at 6. On appeal, Medina-Castellanos' attorney

similarly argued:

The trial court erred in determining the 'total punishment' for the multiple counts of conviction was 540 months imprisonment based upon an improper guideline calculation for the multiple counts of conviction.

[Appellate DE-51] at 19.

In light of the foregoing, it is clear that this claim is belied by the record because

Medina-Castellanos' attorney *did* object to this court imposing an aggregate 540-month sentence

by imposing consecutive sentences. Because Medina-Castellanos has failed to raise a genuine

issue of material fact regarding either deficient performance by his attorney or any prejudice

arising therefrom, the Government is entitled to summary judgment on Medina-Castellanos'
fourteenth claim.

### 13. Failed to argue that the imposition of consecutive sentences was erroneous

In his fifteenth claim, Medina-Castellanos argues that his attorney provided ineffective
assistance of counsel by failing to properly challenge the imposition of consecutive sentences in
this case both before this court and on direct appeal. [DE-261] at 7; [DE-273] at 25-26. Medina-
Castellanos concludes that he was prejudiced because any error by his attorney that results in him
serving even one additional day in prison constitutes ineffective assistance of counsel under
*Strickland*. [DE-273] at 26.

This claim overlaps with Medina-Castellanos' fourteenth claim. As noted above,
Medina-Castellanos' attorney argued before this court at sentencing that the sentences should be
ordered to "run concurrently rather than consecutively." *See* March 27, 2007 Transcript [DE-
235] at 6. As for Medina-Castellanos' claim that his attorney failed to address this issue on
direct appeal, the Fourth Circuit evaluated this court's sentence of 540 months' imprisonment.
[DE-254] at 2-3. In so doing, the Fourth Circuit initially noted that Medina-Castellanos'
advisory guidelines range was 360 months to life imprisonment. *Id.* at 2. The Fourth Circuit
also noted that the statutory maximum for Counts Four and Two was 240 months, and the
statutory maximum for Count One was 60 months. *Id.* at 2-3. The Fourth Circuit observed that
this court imposed the statutory maximum for each count of conviction and concluded that the
sentence properly fell within Medina-Castellanos' advisory guidelines range. *Id.* at 3.

This court notes that an appellate attorney need not address every conceivable issue. Rather, the court "must accord appellate counsel the 'presumption that he decided which issues were most likely to afford relief on appeal.'" *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000) (quoting *Pruett v. Thompson*, 996 F.2d 1560, 1568 (4th Cir. 1993)).

In light of the foregoing, the court concludes that Medina-Castellanos has failed to raise a genuine issue of material fact regarding either deficient performance by his attorney or any prejudice arising therefrom. Therefore, the Government is entitled to summary judgment on Medina-Castellanos' fifteenth claim.

**14. Failed to challenge violation of the Speedy Trial Act on direct appeal**

Medina-Castellanos alleges in his sixteenth claim that his appellate attorney provided ineffective assistance of counsel by failing to challenge the violation of the Speedy Trial Act on direct appeal. [DE-261] at 8; [DE-273] at 26.

As noted above with regard to Medina-Castellanos' first claim, because each continuance in Medina-Castellanos' trial date resulted in the proper exclusion of time from the 70-day period, there was no violation of the Speedy Trial Act. Because a claim based on a violation of the Speedy Trial Act would have been meritless, Medina-Castellanos has failed to raise a genuine issue of material fact regarding deficient performance by his attorney. *See Moore*, 934 F. Supp at 731 (holding that failure to raise a meritless argument can never amount to ineffective assistance). Accordingly, the Government is entitled to summary judgment on Medina-Castellanos' sixteenth claim.

**15. Failed to challenge the *Batson* violation on direct appeal**

In his seventeenth claim, Medina-Castellanos alleges that his appellate attorney provided ineffective assistance of counsel by failing to challenge the *Batson* violation on direct appeal. [DE-261] at 8; [DE-273] at 26.

As addressed at length above under the fourth claim, Medina-Castellanos has failed to show that a *Batson* violation occurred in this case. Because no *Batson* violation took place, Medina-Castellanos has failed to raise a genuine issue of material fact regarding deficient performance by his attorney for failing to address this issue on direct appeal. *See Moore*, 934 F. Supp at 731 (holding that failure to raise a meritless argument can never amount to ineffective assistance). Consequently, the Government is entitled to summary judgment on Medina-Castellanos' seventeenth claim.

**16. Failed to raise denial of his motion for mistrial on direct appeal**

Medina-Castellanos alleges in his eighteenth claim that his appellate attorney provided ineffective assistance of counsel by failing to raise the issue of the denial of his motion for a mistrial on direct appeal. [DE-261] at 8; [DE-273] at 26.

"It is well settled that a grant or denial of a motion for mistrial is within the sound discretion of the trial court, and will not be overturned absent a clear abuse of that discretion." *United States v. Dorsey*, 45 F.3d 809, 817 (4th Cir. 1995). To establish such an abuse of discretion, a defendant must show prejudice. *United States v. Wallace*, 515 F.3d 327, 330 (4th Cir. 2008). In its determination regarding whether prejudice is present, the court "must evaluate whether there is a reasonable probability that the jury's verdict was influenced by the material

that improperly came before it." *United States v. Seeright*, 978 F.2d 842, 849 (4th Cir. 1992) (internal quotation marks omitted).

In this case, Medina-Castellanos has failed to state *any* argument or provide *any* record citations in support of his bare contention that his attorney erred by failing to address the denial of his motion for mistrial on appeal. [DE-261] at 8; [DE-273] at 26. The court concludes that Medina-Castellanos has not presented a genuine issue of material fact regarding either deficient performance by his attorney or any prejudice arising therefrom. Accordingly, the Government is entitled to summary judgment on this claim.

### 17. Failed to challenge the sufficiency of the evidence on direct appeal

In his nineteenth claim, Medina-Castellanos alleges that his appellate attorney provided ineffective assistance of counsel by failing to challenge the sufficiency of the evidence on direct appeal. [DE-261] at 8.

Once again, Medina-Castellanos has failed to state *any* argument or provide *any* record citations in support of his bare statement that his attorney provided ineffective assistance of counsel by failing to challenge the sufficiency of the evidence on direct appeal. [DE-261] at 8. Moreover, the court notes that Medina-Castellanos failed to address this issue in his Opposition to the Government's Motion for Summary Judgment. For these reasons, the court concludes that Medina-Castellanos has not shown that there is a genuine issue of material fact regarding either deficient performance by his attorney for failing to challenge the sufficiency of the evidence on direct appeal or any prejudice arising therefrom. Therefore, the Government is entitled to summary judgment on Medina-Castellanos' nineteenth claim.

27

**18. Failed to challenge consecutive sentences on direct appeal**

Medina-Castellanos alleges in his twentieth claim that his appellate attorney provided ineffective assistance of counsel by failing to argue that it was error for this court to order his sentences to run consecutively. [DE-261] at 8; [DE-273] at 26.

The court notes that this claim is merely a restatement of Medina-Castellanos' fifteenth claim, in which he argued that his attorney provided ineffective assistance of counsel by failing to challenge the imposition of consecutive sentences both before this court and on appeal. [DE-261] at 7; [DE-273] at 25-26. As this court previously noted under the fifteenth claim, the Fourth Circuit addressed the aggregate sentence of 540 months' imprisonment and concluded that it properly fell within Medina-Castellanos' advisory guidelines range. [DE-254] at 3. This court also noted that an appellate attorney need not address every conceivable issue because the court "must accord appellate counsel the 'presumption that he decided which issues were most likely to afford relief on appeal.'" *Bell*, 236 F.3d at 164 (quoting *Pruett*, 996 F.2d at 1568). Because Medina-Castellanos raises no genuine issues of material fact regarding either deficient performance by his attorney or any prejudice arising therefrom, the Government is entitled to summary judgment on Medina-Castellanos' twentieth claim.

**19. Failed to challenge the reasonableness of his sentence on direct appeal**

In his twenty-first claim, Medina-Castellanos summarily alleges that his appellate attorney provided ineffective assistance of counsel by failing to properly challenge the reasonableness of his sentence on direct appeal. [DE-261] at 8; [DE-273] at 26.

28

Medina-Castellanos has made *no* argument in support of his bare assertion that his attorney erred by failing to "properly challenge the reasonableness of the sentence imposed." [DE-261] at 8. The court concludes that Medina-Castellanos has failed to present a genuine issue of material fact regarding either deficient performance by his appellate attorney for failing to challenge the reasonableness of his sentence on direct appeal or any resulting prejudice. Consequently, the Government is entitled to summary judgment on Medina-Castellanos' twenty-first claim.

### 20. Failed to challenge court's refusal to accept guilty plea on direct appeal

Medina-Castellanos summarily alleges in his twenty-second and final claim that his appellate attorney provided ineffective assistance of counsel by failing to challenge on direct appeal the court's refusal to accept his guilty plea. [DE-261] at 8.

The court notes that, once again, Medina-Castellanos has failed to state *any* argument or provide *any* record citations in support of his bare contention that his attorney provided ineffective assistance of counsel by failing to challenge on direct appeal the court's refusal to accept his guilty plea. Moreover, Medina-Castellanos has failed to allege any prejudice arising from his attorney's failure to raise this issue on direct appeal. Because Medina-Castellanos has raised no genuine issue of material fact regarding either deficient performance by his attorney or prejudice arising therefrom, the Government is entitled to summary judgment on Medina-Castellanos' twenty-second claim.

### B. Medina-Castellanos is Not Entitled to Relief on His Second and Eighth Claims.

29

The court concludes that Medina-Castellanos' has presented genuine issues of material fact in the second and eighth claims of his section 2255 motion. For this reason, the Government's Motion for Summary Judgment, as it relates to Medina-Castellanos' second and eighth claims, is DENIED.

## 1. Evidentiary Hearing

At an evidentiary hearing held on November 10, 2014, Medina-Castellanos was present and represented by appointed counsel Robert Lonnie Cooper. The Government was represented by Assistant United States Attorney Shalika S. Kotiya. The court heard testimony from Medina-Castellanos and his trial attorney, Sue Berry.

### a. Medina-Castellanos' Testimony

Medina-Castellanos testified that Berry advised him to cooperate with the Government. *See* November 10, 2014 Transcript [DE-307] at 4. Medina-Castellanos also testified that he asked Berry if there was another option, such as a plea of nolo contendere, but Berry advised him he did not qualify. *Id.* According to Medina-Castellanos, Berry explained to him that his only options were to cooperate with the Government or go to trial. *Id.* at 4, 35.

Medina-Castellanos stated that he speaks only "so-so" English, and Berry did not always bring an interpreter when she met with him. *Id.* at 5. Medina-Castellanos further stated that he did the best he could to communicate with Berry, but because she didn't always have a translator, there were things said that he did not understand. *Id.* at 5, 33.

Medina-Castellanos testified that Berry advised him that he should plead guilty, but he informed her that he would not plead guilty to charges he did not commit. *Id.* at 6-7. Medina-

Castellanos admitted that he was unwilling to admit his guilt. *See* November 10, 2014 Transcript [DE-307] at 18.

Medina-Castellanos testified that while he and Berry generally spent their time together fighting, they did talk "a little" about the nature of the charges against him. *Id.* at 7. Also, Medina-Castellanos testified that Berry provided him with copies of the statements of the people that were expected to testify against him. *Id.* Medina-Castellanos stated that Berry did not ever tell him about the strength of the Government's case and never told him whether she thought the Government had enough evidence to convict him. *Id.* at 8. Medina-Castellanos also stated that he and Berry never had a discussion about the risks of going to trial. *Id.* at 9. Medina-Castellanos testified that Berry never discussed the possible sentences he could receive if he insisted on going to trial. *Id.* Finally, Medina-Castellanos testified that Berry never discussed the sentencing guidelines with him and failed to explain how they might apply to his case. *See* November 10, 2014 Transcript [DE-307] at 9-10.

When asked if Berry reviewed plea offers with him, Medina-Castellanos testified that Berry only presented him with the same deal, a deal which required him to cooperate. *Id.* at 12. Medina-Castellanos stated that Berry failed to review plea offers line by line with him and did not explain the advantages and disadvantages of a plea. *Id.* Medina-Castellanos further stated that Berry would not answer all of his questions about the plea agreements. *Id.* at 13.

Medina-Castellanos acknowledged that he signed a plea agreement with the Government prior to his second trial, but he stated that he did not read it and Berry did not review it with him line by line. *Id.* Medina-Castellanos testified he did not know what he was signing when he

31

signed the plea agreement. *Id.* at 24. Also, Medina-Castellanos testified that Berry said to him that she was going to be able to get him a sentence of eight to twelve years, but that was not what he heard when he came to court for his arraignment. *See* November 10, 2014 Transcript [DE-307] at 13.

Medina-Castellanos testified that he and Berry did not have discussions prior to trial about his desire to testify. *Id.* at 14. Despite this fact, Medina-Castellanos stated that he heard the judge mention during the trial that he had a right to testify. *Id.* Medina-Castellanos testified that after hearing the judge discuss his right to testify, he advised Berry he wished to testify. *Id.* Medina-Castellanos testified that Berry told him that he should be quiet and say nothing at all. *Id.* Medina-Castellanos stated that he persisted in telling Berry that he wished to testify, but she told him not to testify and to say nothing in court. *Id.* at 14, 19. Medina-Castellanos acknowledged that Berry did not physically restrain him from testifying. *See* November 10, 2014 Transcript [DE-307] at 19.

Medina-Castellanos testified that prior to his second trial, he again heard the court explain that he had the right to testify. *Id.* at 30. Medina-Castellanos acknowledged that at his second trial, he exercised his right to testify. *Id.*

### b. Attorney Sue Berry's Testimony

Berry testified that she has practiced as a federal attorney in the Eastern District of North Carolina for fifteen to sixteen years. *Id.* at 37. Berry further testified that she was assigned to represent Medina-Castellanos sometime in the year 2005. *Id.*

32

Berry stated that it was her understanding that the related State charges against Medina-Castellanos, which preceded the federal charges, were dismissed in lieu of federal prosecution. *Id.* at 61-62. Also, Berry stated that it was her understanding that the State dismissal was not based on the merits. *See* November 10, 2014 Transcript [DE-307] at 62.

Berry admitted that during the course of representing Medina-Castellanos she did not always take an interpreter with her for their meetings. *Id.* at 39. Berry explained she did not always use an interpreter with Medina-Castellanos because she did not have any concerns that he was unable to understand their conversations. *Id.* Berry further explained that Medina-Castellanos' ability to speak and comprehend English was more than adequate for their meetings, and she saw nothing to indicate he didn't comprehend what she was saying to him. *Id.* at 39, 65. Finally, Berry testified that if she had any hesitation in her heart or mind about Medina-Castellanos' ability to comprehend English, she would have had an interpreter present. *Id.* at 70.

Berry testified that Medina-Castellanos' position with regard to the charges against him was that he was not guilty because he personally was not involved with the crimes. *Id.* 40-41. Berry stated that her experience in the Eastern District of North Carolina has been that in order to enter a guilty plea, a defendant must be prepared to admit their guilt. *See* November 10, 2014 Transcript [DE-307] at 41-42. Berry further stated that in her experience, a plea of nolo contendere is not an option. *Id.* at 42, 60. Berry stated that she had no specific recollection of discussions with Medina-Castellanos about an open plea, but his position on culpability was a bar to a plea. *Id.* at 60.

33

Berry testified that she communicated all plea offers from the Government to Medina-Castellanos. *Id.* at 42. Berry further testified she had no direct recollection regarding whether there was a plea offer from the Government prior to Medina-Castellanos' first trial, but she could say that if there was an offer, it would have been reviewed line by line and page by page with him. *Id.* at 59. Berry stated that Medina-Castellanos' position prior to the first trial was that he was not guilty of the offenses and had no intention of doing anything but going to trial. *Id.* at 60.

Berry stated that she reviewed discovery in the case with Medina-Castellanos. *See* November 10, 2014 Transcript [DE-307] at 43. Berry admitted that she was unable to reconstruct specific conversations, but she stated she was confident that she and Medina-Castellanos would have talked about the evidence against him. *Id.* at 61. Also, Berry noted that Medina-Castellanos had access to copies of all the discovery materials. *Id.* Berry explained that the evidence in the case consisted of the following: (1) statements from cooperating defendants; (2) a letter written by Medina-Castellanos; and (3) a witness with firsthand knowledge, Medina-Castellanos' wife. *Id.* at 43-44.

Berry testified that a discussion with Medina-Castellanos about his right to testify would have been part and parcel of their discussions in preparation for trial. *Id.* at 62-63. Berry admitted that she did not specifically request that the court inquire of Medina-Castellanos regarding whether or not he wished to testify at his first trial. *Id.* at 63. Berry explained that it is not a practice she engages in because she feels it is an effort to protect the lawyer and not the defendant. *See* November 10, 2014 Transcript [DE-307] at 64.

Berry testified that prior to the January 17, 2006 arraignment she explained to Medina-Castellanos the nature of the charges he was facing and went over the statutory penalties for the charges. *Id.* at 44-45. Berry stated that on a regular basis she emphasized to Medina-Castellanos how serious the charges against him were and that they carried a lot of time. *Id.* at 45. Berry testified she did not provide Medina-Castellanos with an estimate of his sentence. *Id.*

Berry explained that following the first trial, the Government was willing to dismiss the remaining count if Medina-Castellanos acknowledged his guilt for the two crimes on which the jury found him guilty. *Id.* at 47-48. Berry explained that the terms of this agreement with the Government were that the Government would dismiss the remaining count if Medina-Castellanos would do the following: admit his guilt, waive his right to a direct appeal, and engage in cooperation with the Government. *Id.* at 48. Berry stated that this agreement, as she explained to Medina-Castellanos, would have allowed him to reduce his sentencing exposure from forty-five years down to twenty-five years. *See* November 10, 2014 Transcript [DE-307] at 48. Berry testified that she had a specific recollection of reviewing the cooperation agreement with Medina-Castellanos prior to him signing it. *Id.* at 66. Berry stated she believed Medina-Castellanos was prepared to acknowledge he had culpability sufficient to admit he participated in the crimes as an aider and abettor. *Id.* Even so, Berry stated that the cooperation agreement was not entered at the second Rule 11 hearing because Medina-Castellanos refused to acknowledge any criminal culpability. *Id.* at 49.

Berry noted that she believes in and has always followed the Rules of Professional Responsibility, which are very clear that only a defendant can make the decision about whether or not to testify. *Id.* at 52. Berry stated that in Medina-Castellanos' case, as with every other

criminal defendant she has ever represented, the defendant makes the ultimate decision about whether or not to testify after consultation. *See* November 10, 2014 Transcript [DE-307] at 52-53. Berry stated she was sure that she recommended to Medina-Castellanos that he not testify, but Berry noted that she is "absolutely satisfied" that he understood his right to testify. *Id.* at 53.

Berry testified that in the course of preparing for trial, she and Medina-Castellanos would have discussed at length all of the evidence and all of the possible evidence, which would have included Medina-Castellanos' right to testify if he chose to do so. *Id.* at 52. Berry testified she didn't recall Medina-Castellanos expressing a desire to testify during his first trial. *Id.* at 53. Berry acknowledged that during the first trial she advised the court she did not have any evidence, and if Medina-Castellanos had indicated to her that he wished to testify, she would not have made this statement. *Id.* at 55. Berry stated that no matter what she ultimately felt about the wisdom of a defendant's decision to testify, if the defendant expressed to her that he wished to testify, she would advise the court that the defendant wished to testify and call him as a witness. *Id.* at 54.

Berry testified that she did not specifically remember whether or not she advised Medina-Castellanos to testify at his second trial, but that she believed she would have recommended against it. *See* November 10, 2014 Transcript [DE-307] at 56. Berry acknowledged that Medina-Castellanos testified during his second trial. *Id.* at 57.

## 2. Medina-Castellanos' Second Claim

In his second claim, Medina-Castellanos alleges that his attorney provided ineffective assistance of counsel by failing to ensure his decision to proceed to trial was both knowing and

voluntary.  [DE-261] at 4; [DE-273] at 9-11.  Specifically, Medina-Castellanos contends that his attorney failed to inform him that he could plead guilty without a plea agreement and, if he did so, he would be eligible for up to a three-level reduction for acceptance of responsibility.  [DE-273] at 10.  Additionally, Medina-Castellanos contends that his attorney failed to explain the true nature of the charges against him and the evidence required for the Government to convict him. *Id.* at 11.  Medina-Castellanos argues that his attorney failed to explain the risks he faced by electing to plead not guilty and proceed to trial.  *Id.*  Medina-Castellanos concludes that he would have insisted on pleading guilty if his attorney had advised him of any of the following:  (1) he could receive a 540-month sentence by electing to proceed to trial; (2) the evidence against him was sufficient to get a conviction; and (3) he could plead guilty without a plea agreement.  *Id.*

Medina-Castellanos' second claim relies on what information Berry provided him in connection with his decision to proceed to trial on two occasions.  The court having heard the testimony at the November 10, 2014 evidentiary hearing, and having had the opportunity to observe Berry and Medina-Castellanos, finds that Berry's account is more credible.  The court concludes that Medina-Castellanos had no option but to proceed to trial both times because he was simply unwilling to admit any guilt.  As noted above, prior to Medina-Castellanos' second trial, he refused to even admit he was guilty of  Counts One and Four of the Superseding Indictment, the counts the jury had previously found him guilty on.  Had Medina-Castellanos been willing to make this admission, the Government was willing to dismiss the remaining charges against him, which would have significantly reduced his sentencing exposure.

In addition to finding that Berry provided Medina-Castellanos with the proper advice before both trials, the court also notes that the record reveals that Medina-Castellanos received

extensive advice from the court at all three of his arraignments. Specifically, at Medina-

Castellanos' January 17, 2006 arraignment, the arraignment conducted just before his first trial,

the court provided Medina-Castellanos with the following advice:

> In addition to the right to be charged by an indictment, the Constitution and laws of the United States, give you the right to a jury trial with respect to the charges against you. In that regard, you should consider the following:
>
> First: At a jury trial, you would be presumed to be innocent. The Government would be required to prove your guilt by competent evidence and beyond a reasonable doubt before you could be found guilty. You would not have to prove that you were innocent.
>
> Second: Witnesses for the Government would have to come to court and testify in your presence. Your lawyer could cross-examine those witnesses, object to evidence offered by the Government, and offer evidence on your behalf.
>
> Third: You would have the right to use the subpoena power of the court to make witnesses come to court on your behalf, whether they wanted to come or not.
>
> Fourth: You would have the right to testify if you chose to do so. You also would have the right not to testify, and no inference or suggestion of guilt could be drawn from the fact that you did not testify.
>
> If you plead guilty, you will waive your right to a jury trial. Instead of a trial, you will be judged guilty, and you will be sentenced on the basis of your jury [sic] plea in consideration of the factors listed in Title 18, United States Code, Section 3553(a), taking into account the federal Sentencing Guidelines, which have been made advisory only by the Supreme Court in *United States v. Booker*.
>
> Prior to today, you and your attorney should have discussed the applicability of those statutory sentencing factors, including the advisory sentencing Guidelines, to your case and their potential effect upon your sentence. If you have not discussed the sentencing factors with your attorney, you should so advise the Court when your case is called.
>
> I advise you that your attorney's calculation of your anticipated sentence is only an estimate, and that it is solely the Court that will determine your sentence.
>
> The Court's application of the sentencing factors to your case will be made after your presentence report has been completed, and you and the Government have had an opportunity to challenge the facts as reported by the Probation Officer.
>
> The nature of the charge to which you plead guilty is very important because it will determine in large degree the terms of your sentence.

The United States Attorney substantially controls your sentence by selecting the offense for which you are charged, and that charging decision is made in the prosecutorial office. It is not a matter of record or subject to any judicial appeal.

Once the presentence report has been prepared and the Court has resolved any objections you or the Government may make, the Court will exercise its discretion in determining your sentence. Your sentence is not subject to parole.

The Court is obligated to examine carefully your plea agreement with the Government to be sure that the agreement conforms to the objectives of the sentencing Advisory Sentencing Guidelines - - sorry. Conforms to the objectives of sentencing; that is, of imposing a sentence within the parameters of your statute of conviction that is appropriate to the seriousness of your actual offense behavior and your past criminal conduct. Such behavior and conduct will be evaluated by the Court only after the preparation of a detailed presentence report.

Should you enter into a plea agreement with the Government, you should realize that the Court is in no way a party to the same. Such agreements are negotiated solely between you, your lawyer and the lawyer for the Government. You are advised that any stipulations contained in your plea agreement are not binding on the Court for determining your sentence. Rather, the Court will make an independent determination of your sentence after applying all of the sentencing factors to your case.

Should you agree to cooperate with the Government, you should realize that it is this Court's policy not to extend the time of sentencing in order to accommodate a defendant's completion of that cooperation.

A plea of guilty has the following consequences:

First, you will have to waive your right not to incriminate yourself, because the Court will ask you questions about what you did in order to be sure that you are guilty as charged, and you will have to acknowledge your guilt.

Second, the Court may impose the same punishment as if you had pleaded not guilty and had been convicted by a jury.

Third, if you are on probation or parole in another case in this or any court, by pleading guilty here, your probation or parole may be revoked and you may be required to serve time in that case, in addition to any sentence imposed upon you as a result of your guilty plea.

Fourth, in addition to any sentence imposed, your plea of guilty to a felony may deprive you of valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess any kind of firearm. Additionally, unless otherwise advised, you will be assessed per count a sum of not less than $100, and any fine imposed will bear interest.

Fifth, in some cases, obligations in addition to a sentence of imprisonment and/or fine may be imposed upon you. For example, you may be ordered to make

restitution in the form of money, or services in lieu of money, to the victims of your offenses, or you may be required to forfeit certain property to the government, or in the case of offenses involving fraud, you may be ordered to provide notice of your conviction to the victims of your offenses.

Additionally, in most cases, you will be sentenced to a term of supervised release that will follow your term of imprisonment. Supervised release will be conditioned on your non-commission of another federal, state or local crime and such conditions as may be appropriate. If the conditions of release are violated, you may be required to return to incarceration.

Cases in which guilty pleas are entered and accepted today are set for sentencing in Wilmington at 9:00 a.m. on April 24. Regardless of the sentence ultimately found to be appropriate to your case, you may not withdraw a guilty plea that is entered and accepted today.

At the time of sentencing, however, the Court in its sole discretion, may reject your plea agreement should the Court determine that it fails to permit the imposition of an appropriate sentence. If the Court decides to reject the plea agreement, you will then have an opportunity to withdraw your plea and change it to not guilty. If you then enter a plea of not guilty, your case will be set for trial immediately, or, in the Court's discretion, at its ensuing term. Any intervening period of time between today's acceptance of such plea by the Court and such jury trial will not be counted in determining compliance with the Speedy Trial Act.

Between now and the sentencing date just announced, the written presentence report will be prepared by the Probation Office. It is important that the presentence report be complete and accurate, as it will be an important tool to aid the Court in determining whether or not to accept your plea agreement and in determining your sentence. You and your lawyer may give information for the report. You and your lawyer will be furnished a copy of the presentence report, and will have an opportunity to timely comment upon it. Within 15 days after receipt of the report, you and your lawyer must communicate, in writing, to the probation officer, objections to any material information contained in or omitted from the report.

The Court will not consider any dispute which has not been the subject of such written communication. Furthermore, the Court will consider and resolve only issues relevant to disputed sentencing factors previously stated in writing and additionally brought to its attention by you or your lawyer at the time of sentencing.

If you wish to challenge the validity of a prior conviction that is used as a predicate in calculating your sentence, you must do so prior to your sentencing date. At sentencing, you should advise the Court orally if you have any objections as to any matter contained in or omitted from the presentence report that your attorney does not raise at that time. Contentions not stated by you or your lawyer will be deemed abandoned.

In short, if you do not contest the facts set forth in the presentence report, those facts may be accepted by the Court as correct and may be relied upon in determining your sentence.

A mere objection to a finding in the presentence report is not sufficient. You have an affirmative duty to make a showing that the information in the presentence report is unreliable, and articulate the reasons why the facts contained therein are untrue or inaccurate. Without an affirmative showing that the information is inaccurate, the Court is free to rely upon the contents of the presentence report without more specific inquiry or explanation. While the burden is on you to show inaccuracy or unreliability of the matters contained in the presentence report, you have the right not to testify as to such matters, and no inference can be drawn from your assertion of such right. If you do elect to testify, you will be placed under oath and allowed to do so. If you testify falsely, you will be subject to the penalties of perjury.

You and your lawyer should examine the report carefully, and be sure of its accuracy and completeness. This is very important, because the presentence report will assist the Court in the determination of your sentence.

You, or your lawyer on your behalf, are encouraged to submit written memoranda prior to the sentencing hearing where complicated issues are involved. I remind you that your and your lawyer's comments upon or objections to the presentence report must be received by the Probation Office within 15 days of your receipt of the report.

Similarly, any sentencing memoranda, affidavit or other material which you or your lawyer want the Court to consider in exercising sentencing discretion must be submitted to the Court in Wilmington at least one week prior to the sentencing date.

Be advised that after you are sentenced, the Government is limited in most instances to one year within which to move for a reduction in your sentence, pursuant to Rule 35(b), by reason of assistance rendered by you to the Government. The Government is not required to return to court with a Rule 35(b) motion to seek a reduction, and it is completely within the Government's discretion whether or not to do so. If the Government decides not to make a Rule 35(b) motion on your behalf, you are entitled to relief from the Court in only a very few extraordinary circumstances. At sentencing, you should advise the Court whether or not the Government has made any representations to you or your attorney that your future cooperation might result in a Rule 35(b) motion.

If the Government does not make a Rule 35(b) motion to seek a reduction of your sentence by virtue of your assistance, the making of such a motion will not extend, toll, or affect the one-year statute of limitations applicable to the time for filing a post-conviction Section 2255 motion to vacate, set aside or correct your sentence.

Furthermore, the United States Attorney cannot promise you that the court will grant a Rule 35(b) motion, nor can the United States Attorney promise you that law enforcement officers either will accept or act upon your offers of cooperation.

If you are convicted, whether by a jury or as a result of a guilty plea, you can appeal such conviction if you believe that the conviction was somehow unlawful or if there's some other fundamental defect in the proceeding. You also have a statutory right to appeal your sentence under certain circumstances, particularly if you think your sentence is contrary to law.

You may agree to waive your appeal rights, both as to your conviction and sentence, in a plea agreement. Such waivers are generally enforceable. But if you believe the waiver is unenforceable, you can present that theory to the appellate court.

With few exceptions, any notice of appeal must be filed within ten days of the judgment being entered in your case. If you are unable to pay the costs of an appeal, you may apply for leave to appeal *in forma pauperis*. If you so request, the Clerk of Court will prepare and file a Notice of Appeal on your behalf.

*See* January 17, 2006 Transcript [DE-299] at 5-14. Medina-Castellanos received essentially the same advice again at his second and third arraignments, conducted on July 3, 2006 and November 13, 2006. *See* July 3, 2006 Transcript [DE-303] at 4-14; November 13, 2006 Transcript [DE-304] at 4-14.

The court also advised Medina-Castellanos on three separate occasions as to the charges against him and the penalties he was facing. At the first arraignment, which occurred prior to his first trial, the court advised Medina-Castellanos as follows:

To the charge in count one, the conspiracy to commit interstate transportation of stolen property, of the value exceeding $5,000, the penalty for this offense is not more than five years imprisonment, and up to $250,000 fine, up to three years of supervised release, and is subject to $100 special assessment. You may be ordered to make restitution in the form of money or services to any victim of the offense. Upon revocation of supervised release, you may be required to serve two years imprisonment.

In each of counts three and four charges you with assault with a deadly weapon and aiding and abetting therein. The penalty for such offense is not more than 20 years imprisonment and up to $250,000 fine and two years of supervised release. You will be subject to $100 special assessment. Upon revocation of

42

supervised release -- you may be ordered to make restitution to any victim of your offense. Upon revocation of supervised release, you may be required to serve two years imprisonment.

The Government has also filed a notice indicating it's seeking forfeiture of your interest in property used to facilitate your criminal activity or any proceeds thereof.

*See* January 17, 2006 Transcript [DE-299] at 17-18. At his second arraignment, held on July 3, 2006, Medina-Castellanos was advised as follows:

You are here - - you are charged in Count Three of the original - - of the Superseding Indictment with causing an assault with a deadly weapon and aiding and abetting therein.

In a Second Superseding Indictment you are charged with violent crimes in aid of racketeering and aiding and abetting the same, that is to say, assault with a dangerous weapon. That's Count Two of the Second Superseding Indictment.

Now, the penalty for both Count Three of the Superseding Indictment and Count Two of the Second Superseding Indictment, the penalty for each offense is not more than 20 years imprisonment, plus up to a $250,000 fine, up to three years supervised release, you would be subject to a $100 special assessment, you might be ordered to pay restitution to any victim of your offense in the form of money or services in lieu of money and upon revocation of supervised release you might be required to serve up to two years in prison.

The Government has also filed a Notice indicating it will seek the forfeiture of your interest in property either used to facilitate your offenses or being the proceeds thereof.

*See* July 3, 2006 Transcript [DE-303] at 19-20. Medina-Castellanos was advised of these same charges and penalties at his third arraignment held on November 13, 2006. *See* November 13, 2006 Transcript [DE-304] at 18.

In light of Berry's credible testimony that she properly advised Medina-Castellanos about all aspects of proceeding to trial, the fact that this court extensively advised Medina-Castellanos about his rights on one occasion before his first trial and on two occasions prior to his second

43

trial, and the fact that this court advised him of the charges against him, including the penalties, the court concludes that Medina-Castellanos has failed to show he is entitled to relief under *Strickland*. Consequently, Medina-Castellanos's second claim must fail.

### 3. Medina-Castellanos' Eighth Claim

Similarly, the court finds that Medina-Castellanos is not entitled to relief on his eighth claim, wherein he alleges that his attorney provided ineffective assistance of counsel by refusing to allow him to testify and failing to inform him that it was his decision whether or not to testify. [DE-261] at 5; [DE-273] at 18-20. Medina-Castellanos maintains he would have insisted on testifying if he had known it was his decision whether or not to testify and that he had a constitutional right to testify in his own defense. [DE-273] at 19-20. Medina-Castellanos asserts that if he had testified, he would have refuted the Government's evidence and informed the jury why he was acquitted on the State charges. *Id.* at 20.

"[A] criminal defendant has a constitutional right to testify on his own behalf at trial." *United States v. Midgett*, 342 F.3d 321, 325 (4th Cir. 2003) (citing *Rock v. Arkansas*, 483 U.S. 44, 51 (1987)). Further, it is the criminal defendant who possesses ultimate authority to decide whether he will testify. *United States v. McMeans*, 927 F.2d 162, 163 (4th Cir. 1991). Defense counsel has the primary responsibility for advising the defendant of his right to testify and explaining the tactical implications of testifying or not. *Sexton v. French*, 163 F.3d 874, 882 (4th Cir. 1998).

The record reveals that Medina-Castellanos did not testify during his first trial, but he did testify during his second trial. *See* December 4, 2006 Transcript [DE-234] at 1181-1294.

Medina-Castellanos' allegations regarding Berry's failure to advise him of his right to testify and Berry's refusal to allow him to testify directly contradict Berry's testimony at the November 10, 2014 evidentiary hearing. The court concludes that Medina-Castellanos' allegations that Berry failed to advise him of his right to testify and refused to allow him to testify during his first trial are simply not credible.

The court notes that even if Berry failed to advise Medina-Castellanos of his right to testify, he was aware of the right because this court made him aware. A review of the transcript from Medina-Castellanos's January 17, 2006 arraignment, the arraignment conducted before his first trial, reveals that he was properly advised as follows:

> You would have the right to testify if you chose to do so. You also would have the right not to testify and no inference or suggestion or guilt could be drawn from the fact you did not testify.

*See* January 17, 2006 Transcript [DE-299] at 5-6. Moreover, at Medina-Castellanos' November 10, 2014 evidentiary hearing, he testified on several occasions that he heard the court advise him of his right to testify. *See* November 10, 2014 Transcript [DE-307] at 14, 19, 21, 33. For all these reasons, the court concludes that Medina-Castellanos' has not shown he is entitled to relief under *Strickland*. Accordingly, Medina-Castellanos' eighth claim must fail.

## Conclusion

For the foregoing reasons, Medina-Castellanos is not entitled to relief on his section 2255 motion [DE-261]. The Government's Motion for Summary Judgment [DE-292] is ALLOWED in part and DENIED in part, and the Government's Motion to Dismiss [DE-274] is DISMISSED

as moot. The court concludes that Medina-Castellanos has not made the requisite showing to support a certificate of appealability. Therefore, a certificate of appealability is DENIED.

SO ORDERED.

This the **2 6** day of February, 2015.

James C. Fox

James C. Fox

Senior United States District Judge